IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Frank X. KINAST, Attorney at Law.

Supreme Court

*No. 91–2080–D. Submitted on briefs November 10,
1993.—Decided December 6, 1993.*

(Also reported in 508 N.W.2d 380.)

For Frank X. Kinast there were briefs by *Frank X.
Kinast*, Beloit.

For the Board of Attorneys Professional Responsibility there was a brief by *John O. Olson* and *Braden &
Olson*, Lake Geneva.

PER CURIAM.   *Attorney disciplinary proceeding; attorney's license suspended.*

Attorney Frank X. Kinast appealed from the referee's findings of fact and conclusions of law that he

engaged in professional misconduct in two matters and from the referee's recommendation that his license to practice law be suspended for 60 days as discipline for that misconduct. The misconduct consisted of Attorney Kinast's failure to withdraw from a client's representation after being discharged by the client, charging a fee for work in that matter he had not been authorized to perform, continuing to assert that he represented the client following discharge when his interests in the matter conflicted with the client's interest, failing to abide by that client's decision concerning the objectives of representation and charging clients an unreasonable fee in another matter.

We adopt the referee's findings of fact, having determined that, contrary to Attorney Kinast's argument, they are not clearly erroneous. We also adopt the referee's conclusions of law based on those findings. Attorney Kinast refused to accede to his client's decision to discharge him and continued to take action purportedly on the client's behalf in a matter in which he sought to obtain payment of his legal fee for services previously rendered to the client. Further, Attorney Kinast charged clients in another matter a fee exceeding that to which he had obtained the clients' written agreement. The seriousness of that misconduct and the fact that the court previously publicly reprimanded him for charging a clearly excessive fee warrant the imposition of the 60-day license suspension recommended by the referee.

Attorney Kinast was licensed to practice law in Wisconsin in 1947 and practices in Beloit. In 1984, he was publicly reprimanded for charging a clearly excessive fee for representation of a client in a divorce proceeding. *Disciplinary Proceedings Against Kinast*, 121 Wis. 2d 25, 357 N.W.2d 282. After testimony and

evidence were presented at a disciplinary hearing, the referee, Attorney John P. Morris, made the following findings of fact.

In late December, 1983, Attorney Kinast was retained to attempt to vacate a $356,000 default judgment obtained against his client by two neighbors. Upon entry of that judgment, a portion of the client's estate, estimated at one-half million dollars and of which the client was sole heir, was placed in escrow with a bank pending the outcome of litigation attacking the judgment. Although unsuccessful in having the judgment vacated, Attorney Kinast achieved a $150,000 reduction in the punitive damage portion of the judgment.

Subsequent to the default judgment matter, Attorney Kinast brought a libel action against the neighbors' attorney for a statement he had made in a letter to the sheriff asking for protection of the neighbors from harassment by Attorney Kinast's client. In that letter, the attorney referred to Attorney Kinast's client as "a mad man." The jury found the allegedly libelous statement true and the action was dismissed. Immediately following the jury's verdict, on October 31, 1988, the client told Attorney Kinast he was finished as his attorney. Soon thereafter, Attorney Kinast sent the client a statement for legal services in the amount of $136,000, of which there remained a balance of $65,000.

Although he had been discharged at the end of October, 1988, Attorney Kinast continued to represent himself as attorney for the former client, approving a court order of December 21, 1988 directing payment from escrowed funds of the balance due on the default judgment obtained by the client's neighbors, payment of the escrow agent for its fee and issuance of a check

jointly payable to Attorney Kinast and the client for the $260,000 balance of the escrowed funds.

The referee found that, at least by May 4, 1989, Attorney Kinast was fully aware that the client strongly contested his right to be named on the check representing the balance of the escrowed funds, that he challenged Attorney Kinast's right to any of the proceeds of that check and that he had told several persons he had previously discharged Attorney Kinast as his attorney. Further, by July 5, 1989, Attorney Kinast learned that the former client had filed a grievance against him with the Board of Attorneys Professional Responsibility concerning his holding the check and his attempt to obtain payment of his fee by asking the former client to come in to endorse the check.

In response to repeated communications from Attorney Kinast's former client objecting to its having issued the escrowed funds in the form of a jointly payable check, the bank filed a motion in the circuit court seeking to have that check voided and to pay the funds into an interest-bearing account with the court. At the hearing on that motion held July 19, 1989, Attorney Kinast appeared, asserting a possessory lien on the check's proceeds and claiming to be acting as attorney for his former client. He also told the court, in response to its expressed concerns, that his interests and his former client's were of a similar nature.

Although the referee did not make findings, the record establishes the following. Between October 31, 1988 and the date of the hearing on the bank's motion, Attorney Kinast had no communication with his former client; the numerous letters he had sent were returned unopened by a close friend of the former client in May, 1989. At the July 19, 1989 hearing, the judge expressed his belief that there was a conflict between

Attorney Kinast's interests in seeking to protect his claimed legal fees and those of the former client, who had expressed his desire to have total control of the estate funds previously escrowed to pay the default judgment. The former client did not appear at that hearing, either personally or by another.

The court granted the bank's motion and, in addition, ordered payment of its administrative and attorney fees incurred in bringing the motion. Attorney Kinast asked the court to stay execution of that order until he could submit a brief demonstrating that he had an attorney's lien on the funds. In response, the court modified its order to provide that any lien Attorney Kinast might have on those funds would continue to exist once the funds were paid into the court.

Several days later, Attorney Kinast filed a motion asking the court to reconsider its order directing that the jointly payable check be voided and the escrowed funds paid into the court; a few days after that he filed an *ex parte* motion again requesting reconsideration of the order. In each of those motions, Attorney Kinast represented that he was appearing as attorney for the former client. The court held a hearing on the reconsideration motion on August 3, 1989, at which Attorney Kinast again stated that he represented the former client and was intending to preserve his appeal rights. The court denied reconsideration.

On September 11, 1989, Attorney Kinast filed, purportedly on behalf of his former client, a notice of appeal of the circuit court's order voiding the jointly payable check and directing payment of the escrowed funds into the court. On September 23, 1989 he told an attorney hired by his former client to represent him in the matter that he would not sign a stipulation for substitution until the matter of his claimed possessory

36

lien had been resolved. Two days later he filed a petition in the Court of Appeals, purportedly on behalf of his former client, seeking a supervisory writ to prohibit the trial court from executing its order regarding the escrowed funds.

On October 16, 1989, Attorney Kinast submitted a bill to the former client for services rendered which included $200 for preparation for his appearance at the hearing on the bank's motion, $400 for preparation and service of the motion for reconsideration, $500 for preparation, service and filing of the notice of appeal and $500 for drafting, service and filing of the writ of prohibition, together with $210 in disbursements for printing the writ petition.

On the basis of those facts, the referee concluded that Attorney Kinast engaged in professional misconduct as follows: his failure to withdraw from representing the client in ongoing litigation after being discharged on October 31, 1988 violated SCR 20:1.16(a)(3),[1] his charging a fee for work in that matter that he had not been authorized to perform on the former client's behalf constituted an unreasonable legal fee, in violation of SCR 20:1.5(a),[2] his continuing to assert that he represented the former client after he was discharged when that representation was material

---

[1] SCR 20:1.16 provides:

**Declining or terminating representation**
(a)   Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

. . .

(3)   the lawyer is discharged.

[2] SCR 20:1.5 provides:

**Fees**
(a)   A lawyer's fee shall be reasonable. . . .

37

limited by his own financial interests in the matter he was pursuing violated SCR 20:1.7(b)[3] and his failure to abide by the former client's decision concerning the objectives of his purported continued representation violated SCR 20:1.2(a).[4]

In a second matter considered in this proceeding, the referee concluded that Attorney Kinast charged clients an unreasonable legal fee, in violation of SCR 20:1.5(a), based on the following facts. A couple retained Attorney Kinast in the spring of 1988 to represent them in an action brought by a man who claimed they had refused to complete the sale of real estate on which the man had made what he believed to be a binding offer to purchase. The clients and Attorney Kinast entered into a fee agreement drafted by Attorney Kinast providing that he would charge $90 per

[3] SCR 20:1.7 provides:

**Conflict of interest: general rule**

. . .

(b)   A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1)   the lawyer reasonably believes the representation will not be adversely affected; and

(2)   the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[4] SCR 20:1.2 provides:

**Scope of representation**

(a)   A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. . . .

hour and, although stating he was unable to predict the total cost of the lawsuit, estimating it would not be more than $2,000, "give or take $200."

Attorney Kinast filed a motion for summary judgment in the action, which was denied. He then sent the clients a bill for $1,620 for services through June 18, 1988. Ten days after receiving the bill, the clients directed Attorney Kinast not to incur any more expenses in the matter. On August 5, 1988, he sent the clients an additional bill for $535.50, bringing the total fee to $2,061, toward which the clients had initially paid a $500 retainer.

When the clients did not pay the balance of his fee, Attorney Kinast sued them in small claims court. The judge found that Attorney Kinast had not conducted any discovery in the clients' action, had not taken any depositions and that two-thirds of the work in the matter remained to be done. The judge further found that, while Attorney Kinast's summary judgment motion was appropriate in that kind of case, it was a very ordinary kind of procedure and concluded that Attorney Kinast was not entitled to the total fee he had estimated in the fee agreement with the clients. The judge found that Attorney Kinast had performed approximately one-third of the work he had agreed to perform for the clients and was entitled to a fee of $733, toward which the $500 retainer would apply.

As discipline for his misconduct in these matters, the referee recommended that the court suspend Attorney Kinast's license to practice law for 60 days. In making that recommendation, the referee specifically considered the public reprimand imposed by this court in 1984 as discipline for Attorney Kinast's having charged and collected an excessive fee in a divorce proceeding.

In this appeal, Attorney Kinast first contended that the referee's finding that the client in the default judgment matter discharged him immediately following the adverse jury verdict in the libel action is clearly erroneous. His arguments in that respect have no merit, as there is ample evidence in the record to support that finding. The referee's conclusion that he improperly continued to act in the matter concerning the jointly payable check, purportedly on behalf of a client, is supported by the evidence. Attorney Kinast had clear indications that the client did not want his representation, including the fact that the client never acknowledged Attorney Kinast's repeated attempts to communicate with him concerning pending matters and had all of his correspondence returned to him unopened and the fact that he knew the client had filed a grievance against him with the Board for having retained the jointly payable check.

Attorney Kinast insisted he had a professional obligation to continue to represent the man's interest, even if he had reason to believe the client no longer desired his continued representation. Yet, rather than taking action to mitigate the consequences of his withdrawal and ascertain whether the client intended to discharge him, as Attorney Kinast claimed he did, the record discloses that the actions Attorney Kinast took in respect to the jointly payable check for the former client's escrowed funds were calculated to obtain payment of his fees for services previously rendered. Attorney Kinast's interest in asserting and protecting a claimed lien on the proceeds of the check was in direct opposition to the former client's interest, of which Attorney Kinast was aware, in obtaining sole control over the check and the funds it represented.

Attacking the referee's conclusion that he charged an unreasonable legal fee in the real estate matter, Attorney Kinast argued that the referee improperly relied on the small claims court's finding as to his entitlement to fees. There is no merit to his contention that the different burdens of proof in that action and in this disciplinary proceeding and what he considers to have been the referee's misapplication of the collateral estoppel doctrine render the referee's conclusion improper. Likewise without merit is his claim that the referee wrongly relied on the testimony of the clients' successor attorney for the reason that he was the person who had represented the parties who recovered the default judgment against his client in the other matter, the one Attorney Kinast unsuccessfully sued for libel.

We adopt the referee's findings of fact and conclusions of law in respect to Attorney Kinast's misconduct in these matters. The seriousness of that misconduct is aggravated by the fact that this is the second occasion we have had to discipline Attorney Kinast for charging an excessive fee. Attorney Kinast's demonstrated propensity to place his own pecuniary interest in collecting fees above the interests of his clients warrants the discipline recommended by the referee.

IT IS ORDERED that the license of Frank X. Kinast to practice law in Wisconsin is suspended for a period of 60 days, commencing January 17, 1994.

IT IS FURTHER ORDERED that within 60 days of the date of this order Frank X. Kinast pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Frank X. Kinast to practice law

41

in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Frank X. Kinast comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.